Ben CARTER, Plaintiff-Appellee,

v.

**SHEET METAL WORKERS' INTERNA-
TIONAL ASSOCIATION and Local 85
Sheet Metal Workers' International As-
sociation, Defendants-Appellants.**

No. 82–8198.

United States Court of Appeals,
Eleventh Circuit.

Feb. 13, 1984.

Jacobs & Langford, James T. Langford,
Atlanta, Ga., Donald W. Fisher, Toledo,
Ohio, for defendants-appellants.

William R. McCracken, Augusta, Ga., for
plaintiff-appellee.

Before HATCHETT and CLARK, Circuit Judges, and SCOTT *, District Judge.

CLARK, Circuit Judge:

Defendant-appellant, International Union (International), appeals from a judgment awarding Plaintiff-appellee, Carter, $35,000 compensatory damages, $110,000 punitive damages, and $5,280 attorneys fees.[1] The sole issue we need address in this appeal is whether the basis of that award, a state tort claim for intentional infliction of emotional distress, is preempted by the provisions of the National Labor Relations Act under *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). We hold that the state court action is preempted by § 8(b)(1) and (2) (29 U.S.C. § 158(b)(1) and (2)).

### Legal Background

The preemption issue has been litigated frequently since *Garmon, supra,* was decided. *See Linn v. United Plant Guard Workers,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966), (No preemption. Plaintiff had a separate state tort action for defamation arising from activity different from that which could be remedied by the N.L.R.B.); *Farmer v. United Brotherhood of Carpenters,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), (Same as *Linn* except *Linn* had no remedy before the Board while *Farmer's* intestate Hill had a hiring hall discrimination action pursuant to the N.L.

R.A. and a separate state action for defamation); *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978), (Sears sued the union for trespass on its private property while picketing, the trespass action being held a separate state action); *International Union of Operating Engineers v. Jones,* — U.S. —, 103 S.Ct. 1453, 75 L.Ed.2d 368 (1983), (Action in Georgia state court against union for wrongful interference with plaintiff's contractual right to work held preempted by N.L.R.A.). The first teaching of these cases is that state jurisdiction must yield where the activities giving rise to the lawsuit are protected by § 7 of the National Labor Relations Act or constitute an unfair labor practice under § 8. Collaterally these cases teach that the preemptive doctrine will not apply if the activity sued upon is of peripheral concern of the Labor Act or touches "interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. at 244, 79 S.Ct. at 779.[2]

In *Linn, supra,* plaintiff's cause of action sounded in defamation. During a union organizing campaign a member of the union circulated a leaflet which Linn alleged was "wholly false, defamatory and untrue." The Supreme Court considered the fact that the National Labor Relations Board has no jurisdiction to award damages

---

* Honorable Charles R. Scott, U.S. District Judge for the Middle District of Florida, was a member of the panel that heard oral arguments but due to his death on May 12, 1983, did not participate in this decision. The case is being decided by a quorum. 28 U.S.C. § 46(d).

1. Carter sought damages against the defendant alleging that beginning in 1972 it conspired with Local Union 13, "to deprive the plaintiff of his employment in the Sheet Metal Industry, ... to deny the plaintiff his right and privilege to be a member of defendants' union, ... and to subject the plaintiff to embarrassment, scorn and derision among his friends, associates, relatives and fellow employees." Plaintiff alleged: "As a result of the aforesaid acts, the plaintiff has been unable to find employment in

his industry, and he is entitled to recover, among other things, the wages he has lost for these aforesaid acts of the defendant." Plaintiff alleged that the defendants acted maliciously and sought compensatory and punitive damages. The plaintiff dropped Local 85 as a defendant and proceeded against the defendant International Union after removal of the case to federal court.

2. Put another way, the *Garmon* preemption doctrine does not apply if the state has a substantial interest in regulating the challenged conduct and its regulation would not threaten undue interference with the federal regulatory scheme. *Farmer, supra,* 430 U.S. at 302, 97 S.Ct. at 1064.

in an action based on defamation[3] and that a person issuing defamatory material is not protected by the Act from such a lawsuit.[4] Noting that an earlier Supreme Court case had held that state jurisdiction was appropriate where the basis of the action was of "merely peripheral concern of the Labor Management Relations Act,"[5] the Court concluded that a state had an overriding interest in protecting its residents from malicious libel.[6] Thus we learn from *Linn* that where an injured party has no claim for redress under the N.L.R.A. and state law authorizes a cause of action for such a wrong, the preemption doctrine does not apply.

The next instructive case, *Farmer v. United Brotherhood of Carpenters,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), is factually similar to *Linn,* except that Linn was a member of management and consequently could not proceed against the union pursuant to the N.L.R.A., whereas Hill[7] was a member of the union and had a claim pursuant to the Act. Hill filed a two-count complaint in the state court, in the first of which he alleged that the union discriminated against him in its operation of an exclusive hiring hall. In count two Hill alleged that the union had engaged in outrageous conduct, threats and intimidations and offered evidence at trial about incessant verbal abuse and frequent public ridicule. Hill's count two was based on California law permitting an action for outrageous conduct; in the complaint Hill alleged grievous emotional distress resulting in bodily injury. The state trial court dismissed count one on the ground that federal law preempted state jurisdiction and count two went to trial before a jury. The California appellate courts vacated the jury verdict and the Supreme Court granted certiorari. The Court relied in part upon *Linn* in holding that "[n]othing in the federal labor statutes protects or immunizes from state action violence or threats of violence in a labor dispute ..." (citations omitted)

*Farmer,* 430 U.S. at 299, 97 S.Ct. at 1063. In considering Hill's rights under the Labor Act, the Court pointed out that the Board could not award Hill damages for pain, suffering or medical expenses and that the state court action claim that the defendant intentionally engaged in outrageous conduct could be resolved without resolution of the underlying labor dispute involving discriminatory operation of the hiring hall. The Court concluded:

> On balance, we cannot conclude that Congress intended to oust state-court jurisdiction over actions for tortious activity such as that alleged in this case. At the same time, we reiterate that concurrent state-court jurisdiction cannot be permitted where there is a realistic threat of interference with the federal regulatory scheme. Union discrimination in employment opportunities cannot itself form the underlying "outrageous" conduct on which the state-court tort action is based; to hold otherwise would undermine the pre-emption principle. Nor can threats of such discrimination suffice to sustain state-court jurisdiction. It may well be that the threat, or actuality, of employment discrimination will cause a union member considerable emotional distress and anxiety. But something more is required before concurrent state-court jurisdiction can be permitted. Simply stated, it is essential that the state tort be either unrelated to employment discrimination or a function of the particularly abusive manner in which the discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself. (footnote omitted)

*Id.* at 305, 97 S.Ct. at 1066.

### Factual and Procedural Background

With this background, we consider the facts of this particular case. Ben Carter became a member of Local 13 of the Sheet

---

3. 383 U.S. at 63, 86 S.Ct. at 663.

4. *Id.* at 61, 86 S.Ct. at 662.

5. *Id.* at 59, 86 S.Ct. at 661.

6. *Id.* at 61, 86 S.Ct. at 663.

7. Hill's death pending the litigation resulted in Farmer, as administrator of the estate, being substituted.

Metal Workers' Union in New Jersey. Carter worked from 1956 to 1965 for various building contractors on jobs obtained through the union. Carter worked principally in northern New Jersey and New York City, but at times worked at a greater distance from his home. From 1965 to 1968 Carter operated his own sheet metal shop, after which he obtained work as a nonunion estimator with a building contractor. At this time he had his first conflict with the union, growing out of his refusal to contribute to a strike fund. The union levied a $1,500 fine against him but, through correspondence with the International, Carter secured a cancellation of this fine.

Carter's second major conflict occurred when he requested a withdrawal card from Local 13 in view of the fact that he was working in management. The union delayed issuance of the withdrawal card for several months, claiming that Carter owed the union funds from obligations incurred while Carter operated his local sheet metal company. The union asserted that Carter had failed to pay certain monies into the vacation and retirement funds in behalf of union members who worked for Carter. After Carter's several requests to the International that it require the Local to issue the withdrawal card, the Local 13 yielded and issued the card.

Carter moved to Augusta, Georgia, in late 1971 and desired to engage in sheet metal work as a union member. To join Local 85, headquartered in Augusta, Carter had to obtain a reinstatement card from Local 13 which he sought by a letter written January 21, 1972. From that date until March of 1972 Carter corresponded with the Local and the International, but the reinstatement card was not forthcoming. That time frame, during which the International failed to intercede on Carter's behalf, was the principal period of appellant's allegedly tortious conduct. Record at 365 n. 4. Carter eventually obtained his card in 1978.

In December, 1972, Carter filed suit in state court. After protracted litigation,[8] Carter eventually prevailed on the merits against the International in federal court. At trial, Carter testified that "[t]he advantages of being a member of the Sheet Metal Workers' Union is that you make a much greater salary or an hourly wage than you would be working for an open shop." He claimed that he was discriminated against because he did not hold a union card and further testified that regularity of employment is much greater if you are a member of organized labor. Finally, in response to his attorney's request to describe the embarrassment, scorn and derision that he claimed to have suffered as a result of this conduct inflicted on him among his friends, associates, relatives, and fellow employees, Mr. Carter answered: "Well, most of the time, I couldn't get suitable work. And when I did gain work, it was for a lower wage rate and I couldn't provide for my wife as I had usually done. And I felt dejected." The jury found for Carter.

The district court in its order of March 18, 1982, denying the International's motion for judgment notwithstanding the verdict, characterized the case as follows: "The case, however, proceeded to trial only upon an appended state tort claim for intentional infliction of emotional distress." Plaintiff-appellee in his brief in this court characterizes the cause of action as follows: "The plaintiff throughout this period of time, which consisted of more than six years, had to endure the denial of his right to work in a right to work state based upon a continuing refusal of the unions to have his card reinstated and transferred to the Augusta, Georgia area. Plaintiff submits unto the court that the conduct complained of is definitely within the exemptions to the *Garmon* Doctrine and his cause of action is not preempted by the National Labor Relations Act." Appellee's Brief at 17.

---

**8.** Carter secured a state court judgment against the International, but it was set aside by the Georgia Supreme Court because of insufficient service of process on the International Union. Carter recommenced his action in June of 1978 in the state court in Augusta, Georgia, which action was removed by the International Union to the United States District Court and thereafter tried to a jury verdict.

Appellee further contends that he was not suing for lost wages but for the mental anguish he endured throughout this entire period of time. The argument is made that the plaintiff was powerless to pursue his right to work in Georgia and that he was forced to work jobs that did not employ union laborers and that frequently this was at long distances from his home.

### Opinion

Our review of the evidence in this case convinces us that the emotional distress for which the plaintiff recovered damages was a consequence of Carter's failure to secure work in the Augusta area and to obtain wages as high as he would have made as a union member. Carter submitted no evidence by "friends, associates, relatives and fellow employees" with respect to embarrassment, scorn and derision. Nor was there any evidence of medical expense resulting from emotional distress. The only evidence of emotional distress was his statement, "I felt dejected."

The conduct of the defendant International Union challenged in this lawsuit is its failure to intercede in Carter's behalf with the Local 13 between January and March, 1972. That conduct, according to Carter, resulted in his inability to secure his union card in Augusta and denied him the right to work as a union member, causing him emotional distress. As quoted above, the Supreme Court in *Farmer* stated:

> Union discrimination in employment opportunities cannot itself form the underlying "outrageous" conduct on which the state court tort action is based; to hold otherwise would undermine the preemption principle.... Simply stated, it is essential that the state tort be either unrelated to employment discrimination or a function of the particularly abusive manner in which the discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself.

*Farmer, supra,* 430 U.S. at 305, 97 S.Ct. at 1066.

The instant case does not satisfy the *Farmer* standard. The complaint alleges that the International and Local 85 in Augusta, Georgia, conspired to deny Carter the opportunity to pursue his trade as a sheet metal worker in the Augusta area. The underlying conduct precipitating that lost opportunity was Local 13's refusal to issue Carter a reinstatement card and the International's refusal to order Local 13 to do so. Local 13's alleged reason for not issuing the reinstatement card was Carter's refusal to pay the union vacation and retirement funds, an indebtedness incurred by Carter when he operated his own sheet metal business as an employer. These facts suggest that Carter's emotional distress was merely incident to the alleged discrimination rather than unrelated to it or a product of a particularly abusive *manner* of discrimination, as required by *Farmer. See Viestenz v. Fleming Companies,* 681 F.2d 699, 703–04 (10th Cir., *cert. denied* 459 U.S. 972, 103 S.Ct. 303, 74 L.Ed.2d 284 (1982); *Taylor v. St. Regis Paper Co.,* 560 F.Supp. 546, 549 (C.D.Cal.1983). *Cf. Magnuson v. Burlington Northern, Inc.,* 576 F.2d 1367, 1369 (9th Cir.) *cert. denied* 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978) (employment dispute under Railway Labor Act, 45 U.S.C. §§ 151–188); *Beers v. Southern Pacific Transp. Co.,* 703 F.2d 425, 428–29 (9th Cir.1983) (same).

This case is almost indistinguishable from the facts in *Local 100 v. Borden,* 373 U.S. 690, 83 S.Ct. 1423, 10 L.Ed. 638 (1963). In that case, a union business agent, with the ultimate approval of the local union itself, refused to refer the respondent to a particular job he sought, even after the prospective employer requested that he be sent over. This refusal resulted in an inability to obtain the employment. *Id.* at 691–92; 83 S.Ct. at 1424–25. Under these circumstances, the Court concluded that "the *conduct* on which the suit is centered ... is conduct whose lawfulness could initially be judged only by the federal agency vested with exclusive primary jurisdiction to apply federal standards." *Id.* at 698, 83 S.Ct. at 1428 (emphasis original). By comparison, in the instant case, plaintiff suffered an inability to obtain employment because of the Local's refusal to grant a reinstatement

card and the International's refusal to compel its issuance. In view of this factual similarity, *Borden* is very persuasive, if not controlling.

Our conclusion in this case is further supported by the recent Supreme Court opinion in *Local 926 v. Jones,* —— U.S. ——, 103 S.Ct. 1453, 75 L.Ed.2d 368 (1983), a case arising in Georgia. The complaint alleged that the defendant business agent and representative of the union had "maliciously and with full intent, intimidated and coerced Georgia Power Company, or caused Georgia Power Company to be intimidated and coerced, into breaching its employment contract with plaintiff." *Id.* at ——, 103 S.Ct. at 1457.

The Georgia Court of Appeals, 159 Ga. App. 693, 285 S.E.2d 30, sustained this complaint and relied upon its opinion in *Sheet Metal Workers International Assn. v. Carter,* 133 Ga.App. 872, 212 S.E.2d 645 (1975), the present case being considered by us. The Supreme Court held that the Georgia Court of Appeals erred and that the *Jones* state case was preempted. *Jones* had argued that the state cause of action and the unfair labor charge were not sufficiently similar to warrant preemption because the federal claim consists of only coercive action whereas the state claim envisages coercive or noncoercive action. *Jones* relied on *Sears, supra,* in which the Court stated that " 'the critical inquiry' in deciding whether a state claim is preempted because the challenged conduct is arguably prohibited by the federal labor laws is 'whether the controversy presented to the state court is identical to . . . or different from . . . that which could have been, but was not, presented to the Labor Board.' 436 U.S. at 197, 98 S.Ct. at 1757." *Jones,* 103 S.Ct. at 1461. Rejecting Jones' dissimilarity argument, the Court concluded that:

> [e]ven if the Georgia law reaches noncoercive interference with contractual re-

lationships, a fundamental part of such a claim is that the Union actually caused the discharge and hence was responsible for the employer's breach of contract. Of course, this same crucial element must be proved to make out a § 8(b)(1)(B) case; the discharge must be shown to be the result of Union influence. . . . This was not the case in *Sears.* There the state court action was for trespass. It challenged only the location of the Union picketing.

*Jones,* 103 S.Ct. at 1462.

 It is clear to us that the conduct or behavior of Local 13 and the International which was the basis of the jury verdict in this case, is the same conduct or behavior which would support an unfair labor practice complaint filed with the National Labor Relations Board pursuant to 29 U.S.C. § 158(b), which prohibits discrimination on any other ground except the failure to pay dues.[9] The point here is somewhat analogous to the general principle that a plaintiff cannot split a cause of action. A plaintiff cannot sue a defendant in two different causes of action such as in contract and in tort based on the same set of facts. The federal preemption doctrine provides that a disputant in a labor union controversy cannot file an action in a state court based upon a common law or statutory ground if the facts essential to the state court cause of action are the same as those essential to an unfair labor practice complaint. The exception, of course, is where (1) the conduct is so deeply rooted in local law that the state's interest in regulating is compelling, or (2) the matter is of only peripheral concern to the federal labor policy. *Belknap, Inc. v. Hale,* —— U.S. ——, 103 S.Ct. 3172, 3177, 3182, 77 L.Ed.2d 798 (1983). Here Carter's Georgia lawsuit had as its essential facts the failure of a local Union 13 to issue him a reinstated union card and the Inter-

---

**9.** § 158(b) provides:

It shall be an unfair labor practice for a labor organization or its agents—(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section or to discriminate against an employee with respect to whom

membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership.

national's complicity in such a refusal. Without those facts, Carter had no state cause of action. Yet, those same essential facts address only the existence of discrimination for some reason other than the nonpayment of dues, not the abusive manner in which it was carried out; therefore, they also make up the unfair labor practice claim. Accordingly, Carter's Georgia action is preempted. We reverse the judgment of the district court.

REVERSED and REMANDED.