[No. B026226. Second Dist., Div. Six. Nov. 23, 1988.]

DORSEY DUNTON et al., Plaintiffs and Appellants, v.
UNITED ASSOCIATION OF JOURNEYMEN AND
APPRENTICES OF THE PLUMBING AND PIPEFITTING
INDUSTRY OF THE UNITED STATES AND CANADA, LOCAL
403 et al., Defendants and Appellants.

## COUNSEL

Ogle, Gallo & Merzon and Ray A. Gallo for Plaintiffs and Appellants.

Crosby, Heafey, Roach & May, Richard de Saint Phalle and Joseph P. Mascovich for Defendants and Appellants.

## OPINION

**WILLARD, J.**\*—Plaintiffs, union plumbers, filed suit against their local union and others on a cause of action not disclosed by the record. The case was removed to federal court, where an amended complaint was filed, seeking money damages on four causes of action: (1) for improper discrimination by the union; (2) for breach of fair union representation; (3) for breach of a collective bargaining agreement; and (4) pursuant to California decisional law for intentional infliction of emotional distress. They ultimately moved to dismiss the first three causes of action, which motion the federal court granted with prejudice. They then obtained an order retransferring the case to the San Luis Obispo Superior Court. There they obtained jury verdicts against United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, Local Union No. 403, San Luis Obispo, California (local union), and two individual defendants, Stolper and Ward, local union officers, for a total of $218,320 compensatory damages. In addition, there were punitive damage awards of $100,000 against the local union, $2,460 against Stolper, and $1,060 against Ward. Defendants' motion for a new trial was granted on the ground that the evidence was insufficient to support the verdict, and no ruling was made on their motion for judgment notwithstanding the verdict. Plaintiffs appeal from the order granting a new trial. (Code Civ. Proc., § 904.1, subd. (d).) Defendants appeal from the implied denial (Code Civ. Proc., § 629) of their motion for judgment notwithstanding the verdict.

■ We find that the gravamen of the case was employment discrimination (subject to preemption by federal statutes), that such discrimination was not merely peripheral to issues committed solely to the National Labor Relations Board (NLRB), and that there was no evidence that such discrimination was carried out in an abusive manner. In these circumstances, federal law preempts state court jurisdiction. (*San Diego Unions* v. *Garmon*

---

\* Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.

(1959) 359 U.S. 236 [3 L.Ed.2d 775, 79 S.Ct. 773]; *Farmer* v. *Carpenters* (1977) 430 U.S. 290 [51 L.Ed.2d 338, 97 S.Ct. 1056]; see *Belknap, Inc.* v. *Hale* (1983) 463 U.S. 491, 498 [77 L.Ed.2d 798, 806-807, 103 S.Ct. 3172].) We therefore reverse the implied order denying the motion for judgment notwithstanding the verdict, and order that judgment be entered in favor of defendants. This makes it unnecessary to review plaintiffs' claim that the motion for new trial was granted erroneously.

## FACTS

■ In reviewing the denial of the motion for judgment notwithstanding the verdict, we accept the evidence most favorable to plaintiffs and disregard all conflicting evidence. (*Hauter* v. *Zogarts* (1975) 14 Cal.3d 104 [120 Cal.Rptr. 681, 534 P.2d 377, 74 A.L.R.3d 1282].)[1]

Plaintiffs were journeymen plumbers and members of defendant local union. In 1977 they established their own plumbing business as a plumbing contractor operating a nonunion shop. They refused to sign a collective bargaining agreement with defendant local union, and as a result were fined $150 and expelled from membership for failure to pay the fine.

In 1981 their corporation was adjudged bankrupt, but they continued to operate the business as individuals until July 1982. In October or November 1982 they contacted defendant local union, offered to pay the fine, and sought reinstatement as members. Their reinstatement at first was denied on the ground that there was a moratorium on new memberships, which was not true, and after they communicated with an official at the international office of the union with which the local was affiliated, they were reinstated. A period of "several weeks" elapsed from their application to actual reinstatement. Defendant Stolper during this period refused to reinstate them, although he knew that they were entitled to reinstatement. He told plaintiffs that they would have to pay for what they had done. Defendant Ward told them not to come to executive board meetings—that he, Ward, would represent them, and that they should not attend general membership meetings because they would be hurt, but Ward did not threaten either of them with physical harm.

Upon reinstatement, plaintiffs were allowed to sign only book 4, which was the lowest priority work referral book of the local union. They were not

---

[1] Plaintiffs claim that the trial court erred in sustaining objections to the admission of evidence that on a prior occasion the defendant local union, through different officers, discriminated against other persons. Such evidence, if relevant at all, would only tend to support plaintiffs' evidence as to what happened in this case. Inasmuch as we accept plaintiffs' evidence as to what happened in this case, exclusion of evidence in possible support thereof is of no significance.

eligible under union rules to sign any higher priority book. Other members of defendant local union who likewise were ineligible for priority above book 4 were allowed to sign higher priority books, and were referred to work.

In an attempt to qualify for higher priority, plaintiffs requested that the local union sign a collective bargaining contract with them in their capacity as a business. The local union, through its attorney, replied that entry into a collective bargaining agreement was discretionary with the local union. No such agreement was signed.

Defendant Ward told plaintiffs that if they were going to have any chance of returning to work they would have to liquidate their old business's plumbing equipment. They did so about January 1983 at a loss of approximately $20,000.

Defendant Stolper, acting on behalf of the local union, told plaintiffs that if there were no lawsuits pending they could go to work as welders, and offered them training as welders. Plaintiffs refused, believing that they did not and could not qualify as welders.

Within two weeks following this conversation, the present lawsuit was filed. Three or four days thereafter, on April 18, 1983, plaintiffs were referred to work as plumbers and became employed as such at the Diablo nuclear energy power plant being constructed by or for Pacific Gas and Electric Company. They continued such work until June or July of 1984, at which time they were laid off.

On the job at the Diablo plant, plaintiff Dunton was harassed and referred to as a "rat plumber" by one of his coworker, rank-and-file local union members. He was subject to other harassment, both on and off the job, by other rank-and-file members and by one member of the local union's executive board.

The general plumbing foreman at the Diablo job was a member of defendant local union. He did not offer either plaintiff overtime work, although other plumbers worked overtime. Neither plaintiff was appointed by the general foreman to be a foreman, although they were both qualified.

As a result of the foregoing, plaintiffs suffered economic hardship and emotional distress resulting in psychological and physical problems, including depression, headaches, high blood pressure and impotency.

DISCUSSION

The basic question on this appeal is not whether the evidence supported a cause of action under California law for the intentional infliction of emotional distress. ■■■ The critical question is whether liability for conduct of defendants that caused emotional distress is governed by federal law and subject only to federal determination.

■■■ It is well established that in cases alleging discrimination on the part of a union in operating a hiring hall, the federal forum is exclusive unless the discrimination was accomplished by means of action that in itself was abusive. (*Farmer* v. *Carpenters, supra,* 430 U.S. 290, 305 [51 L.Ed.2d 338, 353].) State court jurisdiction is lacking where the crux of the claim is covered by the National Labor Relations Act (NLRA). Alleged discrimination in job referral by a union is within the primary jurisdiction of the NLRB. (29 U.S.C. § 158(b); see, e.g., *Plumbers' Union* v. *Borden* (1963) 373 U.S. 690, 694-696 [10 L.Ed.2d 638, 641-643, 83 S.Ct. 1423]; *Carter* v. *Sheet Metal Wkrs.' Intern. Ass'n* (11th Cir. 1984) 724 F.2d 1472, 1477.) Where, as here, the "crux" of the dispute concerns the operation of a union hiring hall, a state tort claim based on the same conduct is presumptively preempted. (*Motor Coach Employees* v. *Lockridge* (1971) 403 U.S. 274, 295-296 [29 L.Ed.2d 473, 487-488, 91 S.Ct. 1909]; *Borden, supra,* at pp. 697-698 [10 L.Ed.2d at pp. 643-644]; *Carter, supra,* at p. 1477.)

An example of discrimination accomplished by means of abusive conduct is presented in *Richardson* v. *Communications Workers of America* (8th Cir. 1971) 443 F.2d 974. Plaintiff in that case was the subject of an estimable 1,000 vile and derogatory signs, constant chanting of the epithet, "scab," jeering, gesturing, a rain of nuts, bolts and screws thrown at him, intentional cigarette burns, vandalism of his car and locker, and vulgarities about his wife. (*Id.,* at p. 983, fn. 12.) Examples of discrimination by a union in referring members for employment, accomplished by means that were not sufficiently abusive to avoid preemption are presented in *Truex* v. *Garrett Freightlines, Inc.* (9th Cir. 1985) 784 F.2d 1347 (claim for emotional distress based upon a campaign of harassment in the assignment of work duties, abusive language and excessive surveillance was preempted); *Buscemi* v. *McDonnell Douglas Corp.* (9th Cir. 1984) 736 F.2d 1348, 1351-1352 (same result where plaintiff alleged emotional distress based upon the callous and insensitive manner of his termination); *Carter* v. *Sheet Metal Wkrs.' Intern. Ass'n, supra,* 724 F.2d at pp. 1477-1478 (same result with respect to a union conspiracy to prevent the plaintiff from working by refusing to issue a withdrawal card and then refusing to reinstate him); and *Magnuson* v. *Burlington Northern, Inc.* (9th Cir. 1978) 576 F.2d 1367, 1368-

1369 (same result regarding defendants' cover-up of their negligence and conspiracy to have plaintiff discharged).

■ With these general principles in mind, we review the evidence. Before doing so, however, we consider whether defendants' motives for their actions are of any significance. Insofar as discrimination in referring for work is concerned, motive is irrelevant. For a state court to have jurisdiction, the discrimination must have been accomplished by abusive means. Objectionable motives are no substitute for objectionable means. Discrimination is forbidden by the NLRA whether it be for mildly objectionable motives or motives that are atrocious. The outrageousness of the motive is significant in determining liability under state law for the intentional infliction of emotional distress, but not in determining whether there has been federal preemption.

It is not contended that there was anything tortious in the fining of plaintiffs for operating a nonunion shop while they were members of the union, or in expelling them for failure to pay the fine. They were denied readmission to the union for a period of several weeks, but the evidence shows no more than that they were not admitted. This may well have constituted wrongful discrimination, but it was not accomplished by abusive action.

When readmitted to the union, they were placed in book 4, the lowest priority for job referral. They readily concede, as they did at trial, that such placement was correct under the applicable written standards of the union, but argue that it was discriminatory because other union members were placed in a higher priority classification without being qualified therefor. Was this discrimination? The answer is probably yes. Was it done in an abusive manner? The answer is no. The union officer merely stated that plaintiffs would have to sign book 4.

There is evidence that plaintiffs were told to sell their business equipment if they desired to qualify for a higher priority, which they did at a substantial loss. This, too, was discriminatory, but it was done by a plain statement that in itself was not abusively made.

Plaintiffs' business was refused a collective bargaining contract. At that time the business was defunct. There is no contention that the defendant local union was legally obligated to enter into such a contract with plaintiffs, and its refusal to do so was not abusive or tortious.

The discussion regarding welding is of little significance. Plaintiffs were offered an opportunity to go into a different field if no lawsuits were

pending, and they declined to do so. This led to no untoward result, was not discriminatory and was not done abusively.

The acts of harassment attributed to rank-and-file members of defendant local union and to one member of its executive board are of no significance. There was no evidence, direct or circumstantial, that such activity was authorized or ratified by the local union, its governing board, or any of its officers or agents. For the same reason, we disregard complaints that plaintiffs' employer discriminated against plaintiffs with regard to overtime work and promotions. Although the employer's agent was a member of defendant local union, there was no evidence that he was anything but a rank-and-file member of the local union itself, or that he was acting on behalf of anyone other than the employer.

The record does not indicate that any officer of the local union threatened or caused physical harm, subjected either plaintiff to ridicule, used vile language, yelled, screamed, or did anything physically or emotionally abusive. As indicated by the trial judge, defendants' actions were properly categorized as "garden variety'" discrimination.

Plaintiffs claim that *Sears, Roebuck & Co.* v. *Carpenters* (1978) 436 U.S. 180 [56 L.Ed.2d 209, 98 S.Ct. 1745], has effectively overruled the controlling theory of preemption based upon the NLRB's primary jurisdiction over a wide range of labor disputes. *Sears* involved a state court action to enjoin picketing which constituted a continuing trespass under state law. The legality of the picketing was not otherwise addressed. (*Id.,* at p. 185 [56 L.Ed.2d at p. 218].) The Supreme Court determined that preemption of the trespass action was *not* required for two reasons. First, the trespass action would not involve the federal labor issues of whether the picketing was legal; *only the location* of the picketing, a uniquely local concern, was challenged. (*Id.,* at p. 198 [56 L.Ed.2d at p. 226].) *Sears* also held that when a claim of preemption is based upon conduct which is "arguably protected" under the NLRA, the aggrieved party suing in state court must have a "reasonable opportunity" to have the dispute resolved by the NLRB, either by filing a complaint itself or inducing its adversary to do so. (*Id.,* at pp. 200-201 [56 L.Ed.2d at pp. 227-228].) Otherwise, the dispute would be incapable of resolution since it would not be brought before the NLRB and preemption would preclude its resolution by state courts. (*Id.,* at p. 202 [56 L.Ed.2d at pp. 228-229].) Since such a stalemate had occurred in *Sears,* preemption was not required.

Here plaintiffs plainly had an opportunity to have the NLRB resolve their dispute with defendants had they so desired.

Plaintiffs also contend that federal preemption has been limited by *Belknap, Inc.* v. *Hale, supra,* 463 U.S. 491. There the Supreme Court held that strike breakers could sue in state courts on a claim that the employer made misrepresentations to them and breached contracts concerning their continued employment after a strike ended. The claim of the strike breakers had nothing to do with the rights of the strikers, the strike, or collective bargaining, with which the NLRB was concerned. The dispute was peripheral to the NLRA and therefore subject to state court jurisdiction. That is far different than the claims with which we are concerned—discriminatory classification of union members in the administration of a union hiring hall, prohibited by 29 United States Code section 158(b).

The order denying defendants' motion for judgment notwithstanding the verdict is reversed and the trial court is ordered to enter judgment for defendants.

Each side shall bear its own costs on appeal.

Stone (S. J.), P. J., and Abbe, J., concurred.

Appellants' petition for review by the Supreme Court was denied February 15, 1989.