**James Harold HUMPHREYS, Plaintiff,**

v.

**PIE NATIONWIDE, INC.; Truck Drivers and Helpers, Local 728, Defendants.**

**Civ.A. No. 1:87–CV–0150–JOF.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 22, 1989.

Gerald P. Kline, Bauer, Deitch & Raines, John Arthur Bender, Jr., Federal & Todd, Atlanta, Ga., for plaintiff.

John Paul Jones, Jones & Cushman, Clearwater, Fla., Peter Reed Corbin, Corbin & Dickinson, Jacksonville, Fla., Fredrick C. McLam, High House Law Offices, Decatur, Ga., for defendants.

## ORDER

FORRESTER, District Judge.

This matter is before the court on defendant PIE Nationwide Inc.'s motion for summary judgment as supplemented pursuant to the court's order of January 6, 1989. Fed.R.Civ.P. 56.

## I. STATEMENT OF FACTS.

The parties to this action are plaintiff James Harold Humphreys; defendant PIE Nationwide, Inc. (hereinafter "defendant PIE"), plaintiff's former employer; and defendant Teamsters Local No. 728 (hereinafter "the defendant union"), a labor organization of which plaintiff was a member. Until August of 1986, plaintiff was employed as a truck driver and "checker" for defendant PIE, and, at all times relevant to this action, was a member of the defendant Union. As such, he was a beneficiary of a collective bargaining agreement in effect between the defendants. This agreement contained, *inter alia*, a "Uniform Testing Procedure For Illegal Drug Induced Intoxication." *See* Complaint, Exhibit A. This procedure outlined (1) employees subject to drug testing; (2) chain of custody procedures; (3) laboratory methodology for testing; and (4) permissible disciplinary action which an employer such as defendant PIE could take based upon positive test results.

On July 9, 1986, plaintiff was notified that his routine physical examination was to include a urinalysis test for drug usage. He was subsequently directed to report to Howell Mill Industrial Clinic, Inc. (Howell Mill) for this purpose.[1] As instructed, plaintiff reported to Howell Mill on August 14, 1986 and subjected himself to urinalysis testing. When the urinalysis results allegedly showed marijuana usage by plaintiff, defendant PIE terminated his employment August 15, 1986.[2]

After allegedly exhausting his grievance procedures under the collective bargaining agreement in effect between the defendants, plaintiff initiated this action January 29, 1987, alleging defendants' breach of the collective bargaining agreement. *See* 29 U.S.C. § 185. In particular, plaintiff alleges that it was a breach of the agreement to subject him to the urinalysis testing because his job status as a checker exempted him from mandatory testing (Count I). Moreover, plaintiff alleges common law negligence in defendant PIE's failure to ensure compliance with chain of custody procedures with respect to his urine sample (Count IV), as well as intentional infliction of emotional distress (Count II). Count III alleges the defendant union's breach of duty of fair and adequate representation.[3] By the present motion, defendant PIE asserts its entitlement to judgment as a matter of law on Counts I, II and IV.

## II. CONCLUSIONS OF LAW.

### A. *Preemption.*

Defendant PIE's first contention is that plaintiff's state law claims for negligence

---

1. Howell Mill was dismissed from this action by order entered July 7, 1987.

2. Plaintiff returned to Howell Mill on August 15, 1986 and requested that he be re-tested. However, Howell Mill refused to repeat the urinalysis test upon instructions from defendant PIE that plaintiff not be re-tested. A similar request was refused again August 16, 1986. Despite plaintiff's inability to obtain re-testing by Howell Mill, plaintiff alleges that he did secure two additional urinalysis tests within thirty days after the initial tests. Both tests allegedly showed no marijuana usage by plaintiff.

3. The court has previously denied the defendant union's motion for summary judgment on this latter count. *See* Order of January 6, 1989.

and intentional infliction of emotional distress are preempted by the National Labor Relations Act, 29 U.S.C. § 151, *et seq.* Preemption under the NLRA is "to be fleshed-out on a case-by-case basis." *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct.1904, 1916, 85 L.Ed.2d 206 (1985). In general, it is appropriate only where the conduct giving rise to the state law claims is a protected activity under § 7 of the NLRA or constitutes an unfair labor practice under § 8. The preemption doctrine will not apply, however, if the activity sued upon is of only peripheral concern of the NLRA or touches "interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, [courts] could not infer that Congress had deprived the states of the power to act." *Carter v. Sheet Metal Workers International Association*, 724 F.2d 1472, 1473 (11th Cir.1984) (quoting *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959)). With these principles in mind, the court will examine plaintiff's state law tort claims.

### 1. Negligence.

■ As alluded to above, plaintiff alleges that defendant PIE negligently failed to ensure that chain of custody procedures with respect to his drug test were followed and that this negligence resulted in his unlawful discharge. It is clear that the duty which defendant PIE is alleged to have breached is created by the collective bargaining agreement. *See* Complaint, Ex. A, pp. 3–4. While not every state law claim involving a collective bargaining agreement is necessarily preempted, *Allis–Chalmers Corp.*, 471 U.S. at 210–11, 105 S.Ct. at 1910–11, preemption is appropriate if resolution of the claim requires interpretation of the contract or its provisions. *Id.* at 218, 105 S.Ct. at 1914; *Lingle v. Norge, Division of Magic Chef*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). In such an instance, the challenged conduct is clearly more than a mere peripheral concern of the NLRA and, as it is "inextricably intertwined with consideration of the terms of the labor contract," *Allis–Chalmers Corp.*, 471 U.S. at 213, 105 S.Ct. at 1912, cannot be viewed as "unrelated" to activity regulated by the act. *See Carter*, 724 F.2d at 1473–74. Furthermore, the preemptive effect of the NLRA extends beyond state law contract claims and includes claims sounding in tort as well. *See Farmer v. United Brotherhood of Carpenters*, 430 U.S. 290, 302–305, 97 S.Ct. 1056, 1064–1066, 51 L.Ed.2d 338 (1977). For these reasons, the court finds that plaintiff's negligence claim is preempted by the NLRA. Accordingly, defendant PIE's motion for summary judgment as to Count IV of plaintiff's complaint is GRANTED.

### 2. Intentional Infliction of Emotional Distress.

Plaintiff's complaint contains a second claim for relief which alleges that defendant PIE, through its agents, engaged in certain outrageous conduct and thereby caused plaintiff to suffer emotional distress. Specifically, plaintiff asserts that shortly after he declined a proposed salary reduction and request to resign, he was assigned "heavy labor duties" normally not assigned employees in his position; that he was instructed to submit to drug testing though he was not required to do so by virtue of his position; that defendant PIE refused to permit him to be re-tested for drug use though he offered to pay the cost of re-testing himself; and that he was provided with equipment and machinery defendant PIE knew to be in dangerous mechanical condition.

When an employee who is covered by a collective bargaining agreement files a lawsuit stemming from a discharge from employment and which alleges state tort claims, the district court must carefully consider whether § 301 preemption applies. Section 301 of the LMRA creates a federal cause of action for breach of collective bargaining agreements. In order to preserve uniformity, even a suit sounding in tort, rather than on breach of a collective bargaining agreement, is governed by federal law if the action is "inextricably intertwined with consideration of the terms of [a] labor contract." *Allis–Chalmers Corp.*, 471 U.S. at 213, 105 S.Ct. at 1912.

Moreover, § 301 preempts all state law causes of action which require interpretation of a labor contract's terms. *See, e.g., id.* at 214–20, 105 S.Ct. at 1912–15 (finding preempted a state tort based on the duty to act in good faith and deal fairly, because the meanings of "good faith" and "fair dealing" were derived from the particular labor agreement). *Accord Lingle v. Norge, Division of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410 (1988).

As this court recognizes that § 301 does not preempt every employment dispute tangentially involving the labor agreement, *see Lingle,* 108 S.Ct. at 1881–83, it will proceed to analyze the plaintiff's contentions under the Supreme Court's most recent articulations of the standard: Does the application of state law "require[ ] the interpretation of a collective bargaining agreement," *Lingle,* 108 S.Ct. at 1885, or "substantially depend[ ] upon analysis of the terms of an agreement made between the parties in a labor contract?" *Allis–Chalmers Corp.,* 471 U.S. at 220, 105 S.Ct. at 1916.

In his opposition to motion for summary judgment, plaintiff argues that under *Lingle,* his action does not require interpretation of the collective bargaining agreement, inasmuch as his claim for intentional infliction of emotional distress has an independent basis under state law. A state law claim is independent for the purposes of § 301 if "resolution of … it does not require construing the collective bargaining agreement." *Lingle,* 108 S.Ct. at 1877. At first blush, it might appear from the language of the complaint that plaintiff's intentional infliction of emotional distress claim falls outside § 301 and need not call for an interpretation or construction of the collective bargaining agreement. "It is a well-established general rule in [Georgia] that in order to sustain a cause of action for the tort of intentional infliction of emotional distress, the defendant's actions must have been so terrifying or insulting as naturally to humiliate, embarrass or frighten the plaintiff." *Moses v. Prudential Ins. Co. of Amer.,* 187 Ga.App. 222, 224, 369 S.E.2d 541 (1988). None of the proof of the elements of the tort require interpretation of the collective bargaining agreement.

■ Yet, the allegations of the complaint alone will not always resolve the preemption issue. *Lingle* makes clear that the defenses, as well as claims, must be considered in determining whether resolution of the state law claim requires interpretation of the collective bargaining agreement. The key to determining the scope of § 301 preemption is not, therefore, based on how the complaint is framed, but whether the claims can be resolved *only* by referring to the terms of the collective bargaining agreement. *See Newberry v. Pacific Racing Ass'n,* 854 F.2d 1142, 1146 (9th Cir. 1988) (emphasis added). The factual background of the whole case must be examined against an analysis of the state tort claim and a determination made whether the provisions of the collective bargaining agreement come into play. In the present case, defendant PIE's defenses attempt to implicate the collective bargaining agreement. Accordingly, this court must carefully analyze whether in actuality interpretation or construction of the collective bargaining agreement is required in considering such defenses.

■ After reviewing the complaint and subsequent pleadings, this court concludes that plaintiff's intentional infliction of emotional distress claim is not based exclusively on state law and is, in fact, inextricably intertwined with consideration of the terms of the collective bargaining agreement. As to most if not every action deemed by the plaintiff to have caused his emotional harm, the labor agreement and not state law provides the standard for appropriate conduct. For example, work assignments and testing protocol are almost unfettered calls by employers, limited ordinarily only by collective bargaining agreements.[4] Be-

---

**4.** Defendant PIE and Local 728 were parties to the National Master Freight Agreement and Southern Conference Area Local Freight For- warding Pickup and Delivery Supplemental Agreement. *See* Defendant PIE's Answers to Interrogatories, Exhibit H; Article 16 "Equip-

cause an evaluation of these issues is substantially dependent upon an analysis of the terms of the collective bargaining agreement, the intentional infliction of emotional distress claim is preempted by § 301. *See Beers v. Southern Pacific Transportation Co.*, 703 F.2d 425, 429 (9th Cir.1983) (preemption proper where employee's complaint concerned working conditions and disciplinary procedures which are rights covered by or substantially related to the collective bargaining agreement).

Although plaintiff does not contend that its emotional distress claim fits within the exception federal preemption carved out by the Supreme Court in *Farmer v. United Brotherhood of Carpenters*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), this court feels compelled to address the issue in its order. In *Farmer*, a union member brought a claim of intentional infliction of emotional distress against his union and its officials, alleging a pattern of outrageous conduct that included "frequent public ridicule," "incessant verbal abuse," and discrimination in hiring referrals. *Id.* at 293, 97 S.Ct. at 1060. The *Farmer* Court held that federal law did not preempt the plaintiff's state law claim for intentional infliction of emotional distress, reasoning that no provision of the NLRA protected against the "outrageous conduct" complained of by the union employee. *See id.* at 305, 97 S.Ct. at 1066. The Court noted that the state's substantial interest in protecting its citizens from the kind of personal abuse of which the employee and Farmer complained outweighed any potential for interference with the federal scheme of regulation. *See id.* at 302–04, 97 S.Ct. at 1064–65.

The Court established a two-pronged alternative standard for permitting concurrent state court jurisdiction over tort actions: "Simply stated, it is essential that the state tort be *either* unrelated to employment discrimination *or* a function of the particularly abusive manner in which the discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself."

*Id.* at 305, 97 S.Ct. at 1066 (emphasis added).

Plaintiff's emotional distress claim is based upon allegations that his supervisors at PIE harassed him through a course of conduct which included reassignment of work duties, assignment of work on equipment known to be in dangerous mechanical condition, and improper administration of drug testing. To the extent that plaintiff would assert that either of these allegations fit within the first prong of the *Farmer* exception to preemption, the argument is without merit. "The *Farmer* Court's characterization of the first prong in the *Farmer* test—that the tort be 'unrelated to employment discrimination'—is equivalent to the requirement that the facts not be 'inextricably intertwined' with a labor law duty established by the collective bargaining agreement." *Truex v. Garrett Freightlines, Inc.*, 784 F.2d 1347, 1351 (9th Cir.1985). As concluded above, plaintiff's emotional distress claim is substantially dependent upon an analysis of the collective bargaining agreement and is, therefore, preempted under § 301.

Inasmuch as plaintiff would further argue that defendant PIE's campaign of harassment is sufficiently outrageous that it satisfies the requirements of the second prong of the *Farmer* exception, this argument also is meritless. Plaintiff's factual allegations do not advance his cause in light of the circuit court's narrow construction of the "particularly abusive manner" exception required by *Farmer*. In *Carter v. Sheet Metal Workers International Assn.*, 724 F.2d 1472 (11th Cir.1984), the Eleventh Circuit held that a conspiracy to deny plaintiff employee work opportunities did not rise to the level of outrageous conduct required to avoid preemption under *Farmer*. *See id.* at 1476; *see also Magnuson v. Burlington Northern, Inc.*, 576 F.2d 1367, 1369 (9th Cir.1978) (holding that complaint for emotional distress will not fit within "the narrow exception to the federal preemption explained in [*Farmer*]").

Here, the emotional distress allegedly arose out of the plaintiff's discharge or the

ment and Safety"; Article 46 "Discharge or Sus-      pension."

conduct of defendant PIE in the investigatory proceedings leading up to the discharge. The harassment against which plaintiff complains falls way short of the truly outrageous conduct identified in *Farmer.* Moreover, defendant PIE's reassignment of plaintiff's work duties and drug investigation was not accomplished in such an abusive manner that it falls outside the conduct regulated by the collective bargaining agreement. In sum, plaintiff's declarations filed in opposition to defendant PIE's motion for summary judgment do not set forth any facts which would support a finding of outrageous conduct; rather, plaintiff's declarations merely recite specific acts of harassment, all of which were covered by the grievance procedure of the National Master Freight Agreement. Therefore, the conduct in the instant case does not fall within the *Farmer* exception to federal preemption. For these reasons, the court finds that plaintiff's intentional infliction of emotional distress claim is preempted by § 301 of the LMRA. Accordingly, defendant PIE's motion for summary judgment as to Count II of plaintiff's complaint is GRANTED.

B. *29 U.S.C. § 185.*

A party seeking judicial review of an otherwise final and binding arbitration proceeding must demonstrate (1) that the union breached its duty of fair representation to him during the proceeding; and (2) that the employer engaged in conduct violative of the collective bargaining agreement. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Samples v. Ryder Truck Lines, Inc.,* 755 F.2d 881 (11th Cir.1985). The court will examine these factors in turn. The court has previously determined that a question of fact exists as to whether the defendant union fulfilled its duty to plaintiff to provide fair representation during his dismissal proceedings. *See* Order of January 6, 1989. In addition, the court finds that a question of fact exists as to whether proper chain of custody procedures were followed with respect to plaintiff's drug test and therefore whether defendant PIE breached this aspect of the collective bargaining agreement. Accordingly, defendant PIE's motion for summary judgment on Count I of plaintiff's complaint is DENIED.

III. CONCLUSION.

In sum, defendant PIE's motion for summary judgment is GRANTED as to Count IV of plaintiff's complaint and DENIED as to Counts I and II. The parties are DIRECTED to prepare and submit the proposed consolidated pretrial order for the court's consideration within thirty (30) days of the date of this order.

IT IS SO ORDERED.